UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA S. for WENCY S.,[1]<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[2]<br><br>Defendant. | Case No.: 22-cv-1993-MMP<br><br>**ORDER REVERSING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g)** |

Plaintiff Francesca S. ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, appeals the final decision of the Commissioner of Social Security Administration ("Commissioner" or "Defendant") denying her late husband's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. [ECF No. 1 at 2; ECF No. 4.] Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g). Plaintiff

---

[1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court refers to all non-government parties by using their first name and last initial.

[2] Martin O'Malley, the current Commissioner of Social Security, is automatically substituted as defendant for Kilolo Kijakazi, the former Acting Commissioner of Social Security, pursuant to Federal Rule of Civil Procedure 25(d).

filed an opening brief, to which Defendant responded. [ECF Nos. 22, 25.][3] The parties have consented to the undersigned for all purposes. [ECF No. 39.]

After a thorough review of the parties' submissions, the administrative record, and the applicable law, and for the reasons set forth below, the Court **REVERSES** the final decision of the Commissioner of Social Security and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## I.   PROCEDURAL HISTORY

On July 24, 2019, claimant Wency S. ("Claimant") filed an application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act, alleging a disability onset date of October 31, 2018. Administrative Record ("AR") 9, 190–207. Claimant's alleged impairments include diabetes type 2 with retinopathy, peripheral neuropathy, and diabetic foot resulting in a right second toe amputation; hypertension and diastolic heart failure; chronic kidney disease; late effects of strokes; and shoulder and back pain. *See* AR 221, 281–87. The claims were denied initially on April 22, 2020, and upon reconsideration on May 22, 2020. AR 9, 103–08, 112–18. Claimant filed a written request for hearing. AR 119–20.

On November 24, 2020, the Administrative Law Judge ("ALJ") held a telephonic hearing in which Claimant, appearing with counsel and a non-attorney representative, as well as a vocational expert testified. AR 9, 23–51. On May 20, 2021, the ALJ issued a decision denying benefits. AR 9–18. Claimant filed a request for Appeals Council review. While the request was pending, Claimant passed away, and his wife sought to be substituted in as a party to the proceeding. *See* AR 316. Appeals Council review was denied on May 31, 2022; thus, the ALJ's decision is the final decision of the Commissioner of Social Security. *See* AR 1–5.

---

[3] At Plaintiff's request, the Court granted numerous extensions of time for Plaintiff to file her reply, ultimately extending the deadline to December 13, 2023. [ECF Nos. 30, 32, 40.] No reply was filed.

## II.    SUMMARY OF ALJ'S FINDINGS

### A.    The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i) and (b); *see also* 20 C.F.R. § 416.920(a)(4)(i) and (b).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least twelve (12) months; if not, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 404.1509 (setting forth the twelve (12) month duration requirement); *see also* 20 C.F.R. §§ 416.920(a)(4)(ii) and (c), 416.909. If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. 20 C.F.R. § 404.1520(a)(4)(iii) and (d); *see also* 20 C.F.R. § 416.920(a)(4)(iii) and (d).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc.

Sec. Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (S.S.A. 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments – even those that are not severe – and must assess his "work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1; 20 C.F.R. §§ 404.1545(a)(1)–(2) and (e), 416.945(a)(1)–(2) and (e); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective"). An RFC determination must be based on "all the relevant evidence" including the diagnoses, treatment, observations, and opinions of medical sources. 20 C.F.R. §§ 404.1545(a)(1)–(3), 416.945(a)(1)–(3). A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ, however, errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence in the record" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). At step four of the sequential process, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(iv) and (f)–(g); *see also* § 416.920(a)(4)(iv) and (f)–(g).

At step five, the burden then shifts to the ALJ to establish the claimant is not disabled because there is other work existing in "significant numbers in the national economy" the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1560(c), 416.960(c); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1); *see Hill*, 698 F.3d at 1162. The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all the claimant's physical and mental limitations that are supported by the record or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Id*. The determination of this issue comprises

"the fifth and last step" in the sequential analysis. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**B.     The ALJ's Application of the Five-Step Process**

1.     <u>Step One</u>

At step one, the ALJ found Claimant "had not engaged in substantial gainful activity since October 31, 2018, the alleged onset date." AR 12.

2.     <u>Step Two</u>

At step two, the ALJ found Claimant had the following severe impairments: "diabetes mellitus, with peripheral neuropathy, status-post right second toe amputation; right shoulder myofascial disorder; and hypertension." *Id.* (citing 20 CFR §§ 404.1520(c), 416.920(c)).

The ALJ found Plaintiff's treatment for strokes, cataract extractions, and diastolic heart failure were not severe impairments. AR 12. The ALJ noted Claimant suffered an initial stroke on May 31, 2019 and another lacunar stroke around March 2020, yet "maintained normal gait, normal strength, intact sensation, and notations from treatment providers that he had good recovery from these events." *Id.* (citing AR 337–39, 670–76, 787–89). Thus, the ALJ concluded Claimant's strokes were not severe impairments because he recovered fully within twelve months of his strokes. AR 12.

The ALJ next addressed Claimant's diastolic heart failure, noting he suffered from two episodes of heart failure within two months in September and October 2020, and he presented with edema and was given medication to help purge his body of excess fluid. *Id*. The ALJ found there was "no evidence of additional complications from this impairment" outside of the two episodes. *Id.* (citing AR 1623–2019, 4035–4252). Thus, the ALJ concluded Claimant's diastolic heart failure did not qualify as a severe medically determinable impairment because "this problem resolved with treatment" and did not last, or was not expected to last, a continuous twelve-month period. AR 12.

The ALJ also noted Claimant "presented with eye problems and was diagnosed with cataracts" and had initially planned to undergo surgery in October 2020, but due to

complications from other problems, pushed his surgery back. *Id.* (citing AR 3306–09, 4275–81). The ALJ further explained Claimant underwent bilateral cataract extraction and lens replacement on February 22, 2021. AR 12 (citing AR 3306–09, 4400–03). The ALJ found Claimant's cataracts did not qualify as a severe impairment because his "eye surgery was successful and from the time the claimant initially sought treatment for eye problems to the successful surgery, was less than 12-consecutive months." AR 12.

The ALJ further found Claimant's mild degenerative joint disease of the lower thoracic spine was not a severe medically determinable impairment because there was no evidence of limitations on range of motion or mobility or pain in the Claimant's back that was under care or treatment. AR 13.

Finally, the ALJ noted Plaintiff was diagnosed with kidney stones but found there was no evidence of additional complications from this impairment, including worsening of Claimant's kidneys. *Id.* (citing AR 331–33). Thus, the ALJ found Claimant's kidney stones did not cause "more than minimal limitation on [his] ability to perform basic work activities" and thus was not a severe impairment. AR 13.

### 3.   Step Three

At step three, the ALJ found Claimant did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* (citing 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

### 4.   RFC Determination

The ALJ determined Claimant had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except: he could "lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps, stairs, balance, stoop, kneel, crouch, crawl; occasional right overhead reaching, and need to avoid unprotected heights, dangerous moving machinery." AR 13.

In determining Claimant's RFC, the ALJ explained he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p" and "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." AR 13–14.

The ALJ found Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but Claimant's "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence" and Claimant's daily activities. AR 14–15. In considering the medical evidence, the ALJ concluded Claimant underwent amputation of his right second toe in August 2020 but "recovered from the toe amputation well with no deficits on his ambulation despite this procedure." AR 14 (citing AR 4255–57).

The ALJ also considered medical opinions and prior administrative medical findings, finding persuasive the opinions from Dr. S. Laiken dated April 22, 2020 and Dr. K. Mauro dated May 19, 2020, two state agency medical consultants. AR 15 (citing AR 52–73, 76–85). Drs. Laiken and Mauro each reviewed the medical evidence and opined Claimant was able to lift and carry twenty pounds occasionally, ten pounds frequently; stand and/or walk about six hours; sit about six hours; occasionally climb ramp/ stairs, balance, stoop, kneel, crouch, crawl; never climb ladders/ ropes/ scaffolds; occasional overhead reaching with right upper extremity; and avoid concentrated exposure hazards. AR 15. The ALJ explained "[b]oth supported their conclusions with the analysis provided" in their respective disability determination explanation form, noting Claimant had "poorly controlled diabetes mellitus but normal physical examinations." *Id.* The ALJ further concluded their findings were consistent with the objective medical evidence of record, which showed Claimant "had normal physical examinations including normal strength and normal gait despite the consistent peripheral neuropathy and the toe amputation along with the pain in the right shoulder." AR 15 (citing AR 52–73, 76–85).

In summary, the ALJ acknowledged Claimant was "not able to perform all work at all exertional levels because of his impairments" and further found the "full medical evidence of record shows that while the claimant suffers from diabetes mellitus with complications of peripheral neuropathy and while he suffered strokes, the full medical evidence of record shows the claimant continues to maintain full strength and that he has a normal gait despite the additional complication of the toe amputation." AR 15–16.

### 5.   Steps Four and Five

At step four, the ALJ found Claimant is unable to perform any past relevant work. AR 16 (citing 20 C.F.R. §§ 404.1565 and 416.965).

At step five, the ALJ found that considering Claimant's age of fifty-one years old, high school education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy Claimant could perform. AR 16 (citing 20 C.F.R. §§ 404.1569, 404.1596(a), 416.969, and 416.969(a)). The ALJ based his conclusion on the testimony of the vocational expert, who testified an individual with Claimant's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as Marker (DOT 209.587-034), Mail Clerk (DOT 209.687-026), or Production Assembler (DOT 706.687-010). AR 17–18.

Accordingly, the ALJ found Claimant had not been under a disability, as defined by the Social Security Act, from October 31, 2018, through the date of the ALJ's decision. AR 18.

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if "it is either not supported by substantial evidence or is based upon legal error." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)).

The substantial-evidence standard requires a reviewing court to "look to the existing administrative record and ask whether it contains sufficient evidence to support the

agency's factual determinations." *Woods*, 32 F.4th at 788 (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023); *see also Valentine*, 574 F.3d at 690. Thus, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Woods*, 32 F.4th at 788 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The ALJ is responsible for resolving conflicts in medical testimony as well as any ambiguities in the record. *Id.*; *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010; *see also Collings v. Saul*, 856 F. App'x 729, 730 (9th Cir. 2021).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the ALJ committed legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

1

## IV.   DISCUSSION

2    In her opening brief, Plaintiff asserts a consultative examination of Claimant was
3  scheduled in Claimant's underlying disability case; however, due to a scheduling error
4  regarding the location of the appointment, the examination never took place and was not
5  subsequently rescheduled. [ECF No. 22 at 1–2.] Plaintiff also asserts several of Claimant's
6  doctors found Claimant was unable to work due to his medical condition. In support of her
7  brief, Plaintiff attaches two documents from physicians dated in 2023 and three "Work
8  Status Reports" issued in 2020—none of which are part of the administrative record. Both
9  2023 documents as well as two Work Status Reports address Claimant's strokes, and the
10  remaining Work Status Report addresses Claimant's toe amputation.  [*See id*. at 3–10.]

11    In response, Defendant contends generally the ALJ's decision is supported by
12  substantial evidence and free from reversible error. [ECF No. 25 at 3.] Defendant also
13  asserts the ALJ properly found the opinions of State agency medical consultants Dr. S.
14  Laiken and Dr. K. Mauro persuasive, though Defendant acknowledges Plaintiff does not
15  address these issues. [*Id.* at 7.] Defendant further contends the Court should not consider
16  Plaintiff's new evidence because it is nonprobative, addresses issues reserved for the ALJ,
17  and "[e]ven if one were to string together the periods from all status reports discussed
18  above, they would not equal at least one year, let alone a '*continuous* period of not less
19  than 12 months.'" [*Id.* at 9 (quoting 20 CFR § 404.1505(a)).]

20    Courts liberally construe documents filed by *pro se* litigants. *Erickson v. Pardus*,
21  551 U.S. 89, 94 (2007); *Woods v. Carey*, 525 F.3d 886, 889–90 (9th Cir. 2008). Because
22  Plaintiff is appearing *pro se*, the Court liberally construes her brief as asserting the
23  following challenges to the ALJ's opinion: (1) the ALJ erred in concluding Claimant's
24  stroke was not a severe impairment, (2) the ALJ's finding Claimant's toe amputation had
25  no deficits on his ambulation is not supported by substantial evidence, and (3) the ALJ
26  violated his duty to develop the record. In addition, the Court construes Plaintiff's brief as
27  requesting remand for consideration of new evidence not in the administrative record under

28

sentence six of 42 U.S.C. § 405(g). The Court addresses the challenges to the ALJ's opinion first before considering Plaintiff's new evidence.

### A.     Plaintiff's Challenges to the ALJ's Opinion

#### 1.     Whether the ALJ Properly Concluded Claimant's Stroke Was Not a Severe Impairment

At step two, an ALJ must determine whether the claimant has a medically determinable impairment—or combination of impairments—that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c).  To qualify as "severe," the impairment must significantly limit the claimant's "physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and "must have lasted or be expected to last for a continuous period of at least 12 months" or be expected to result in death. 20 C.F.R. §§ 404.1509, 416.909; *see also Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28, 1985 WL 56856 (S.S.A. 1985) (hereinafter "SSR 85-28"). "Basic work activities" include not only physical functions like walking, standing, lifting, pushing, pulling, carrying, but also cognitive functions like using judgment, and understanding, carrying out, and remembering simple instructions. SSR 85-28, 1985 WL 56856 at *3. An impairment is not severe if "the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28, 1985 WL 56856, at *3).

"A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities." SSR 85-28, 1985 WL 56856, at *4. "Even though a non-severe 'impairment[ ] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing SSR 96–8p (1996)).

The ALJ found Claimant's initial stroke on May 31, 2019 and second lacunar stroke around March 2020 were not severe impairments because Claimant recovered fully within twelve-months of the alleged events. AR 12. The ALJ reasoned "[d]espite the claimant's strokes, the claimant maintained normal gait, normal strength, intact sensation, and notations from treatment providers that he had good recovery from these events." *Id*. (citing AR 337–39, 670–76, 787–89). The ALJ further explained "[t]he claimant did suffer from strokes, but the claimant recovered from these events and was able to walk normally, and had normal strength, despite the allegations that he did not recover from this event." *Id*.

In support of his finding, the ALJ cites three treatment records. First, a treatment record from July 3, 2019, in which Dr. Schlosser Covell, Neurology, treated Claimant for a follow up after stroke, including a cognitive evaluation. AR 337–39. She noted "good recovery" and Claimant was "improving." AR 339. She also ordered a one-month follow up MRI to assess for evolving stroke and rule out underlying CNS lesion. AR 339, 2311–12. Based on the MRI results, Dr. Schlosser Covell noted the strokes were "healing as expected" and no new lesions were found, though there was some "bleeding into region of strokes" that likely occurred when Claimant's blood pressure was uncontrolled. AR 322. In addition, Dr. Schlosser Covell referred Claimant to physical therapy, which occurred on August 20, 2019. AR 339, 787–89. At that physical therapy initial evaluation, Claimant's gait was found to be "independent with no device x 500+ feet" and within functional limits. AR 789. The treatment notes from this visit indicate Claimant was able to ambulate "river stones with cone tap" and on balance beam with no loss of balance. *Id.* Claimant was found to have no impairments with no further need for skilled physical therapy. *Id*.; *see also* AR 2780. Lastly, the ALJ cited a treatment record from Claimant's primary care physician, Dr. Turla, who treated claimant on December 26, 2019 for a routine follow up, noting Claimant was "doing better." AR 671. Dr. Turla's treatment notations from this visit indicate "Patient advised that he no longer has any neurological deficits and has to return to work." AR 675.

While the ALJ cites portions of the administrative record that support his finding that Claimant recovered physically from his May 31, 2019 stroke, the ALJ does not address

the other treatment notations reflecting Claimant experienced late effects of strokes. Notably, following Dr. Turla's finding Claimant "no longer has any neurological deficits" from his stroke, on December 31, 2019, Dr. Schlosser Covell noted Claimant was "still symptomatic s/p stroke" in light of Claimant's complaints of increased memory issues in a telephonic appointment and, as a result, extended his off-work status until February 2020. AR 744. On February 11, 2020, Dr. Schlosser Covell treated Claimant for a subsequent follow up after stroke, noting Claimant complained he recently experienced a spell of leg dragging and times when he was speaking "gibberish." AR 718. In light of Claimant's reported symptoms, Dr. Schlosser Covell ordered another brain MRI and noted Claimant "may have some permanent issues related to prior stroke but reassuring mental status on last exam, and good exam today." AR 722. She also extended his time off work through March 2020. AR 722. On March 23, 2020, Radiologist Dr. Asako Miyakoshi performed an MRI confirming Claimant suffered from another lacunar stroke. AR 3059–61; *see* AR 907. On or around March 24, 2020, Dr. Schlosser Covell extended Claimant's off work status again and separately noted Claimant experienced "[n]ew lacunar stroke, likely from uncontrolled [Diabetes mellitus], HL, and small vessel disease." *Id.*

On June 25, 2020, Dr. Schlosser Covell treated Claimant again, and her treatment notes indicated he has a history of "stroke with residual memory loss, vision loss, and brittle [Diabetes mellitus]." AR 3192–93. Though her treatment notations indicated Claimant had "[n]o strokes in recent months," they also noted Claimant "[s]till has vision loss and depends on wife for ADLs [activities of daily living] due to stroke affecting cognition." AR 3193. Similar notations appear throughout treatment records through November 2020. *See, e.g.*, AR 3407, 4143.

In reviewing the ALJ's opinion, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison*, 759 F.3d at 1009. Moreover, an ALJ cannot selectively rely on some entries of medical records to support his conclusion, while ignoring others

that may undermine or contradict it. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("[T]he ALJ selectively relied on some entries in Holohan's records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment.").

Here, the ALJ relied on certain notations from treatment providers through December 26, 2019 to conclude Claimant fully recovered from his May 2019 and March 2020 strokes within twelve months. AR 12. However, other treatment notations from these same providers, particularly Dr. Schlosser Covell, indicated Claimant suffered certain late effects of strokes affecting cognition and was experiencing these late effects more than twelve consecutive months after Claimant suffered his initial stroke on May 31, 2019. *See* AR 3193. While the Court agrees substantial evidence supports the ALJ's conclusion Claimant recovered physically from the strokes as of December 2019—the last record cited by the ALJ for his conclusion—the ALJ did not address treatment notations regarding the late effects of Claimant's strokes or other notations suggesting Claimant suffered cognitive effects. While the late or cognitive effects of stroke may not ultimately be found to be a severe impairment, it is unclear whether the ALJ considered such treatment notations when assessing whether the strokes qualified as a severe impairment. *See Garrison*, 759 F.3d at 1010 (The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). Because the ALJ relied on some treatment notations supporting his conclusion that Claimant recovered fully within twelve months without stating the other treatment notations that potentially detract from this conclusion were considered, the Court cannot conclude substantial evidence supports the ALJ's determination Claimant fully recovered from his strokes within twelve months and therefore his strokes were not a severe impairment at step two.

2. <u>Whether Substantial Evidence Supports the ALJ's Conclusion That Claimant Recovered from the Toe Amputation with No Deficits on His Ambulation</u>

The ALJ discounted Claimant's subjective statements regarding intensity, persistence, and limiting effects of his symptoms based on, *inter alia*, the ALJ's conclusion Claimant "recovered from the toe amputation well with no deficits on his ambulation despite this procedure." AR 14 (citing AR 4255–57). For the reasons discussed below, the Court finds substantial evidence does not support the ALJ's conclusion.

Relying on Claimant's Function Report dated September 14, 2019, the ALJ noted in relevant part Claimant "is still able to cook, perform some chores, engage in some hobbies." AR 14. The ALJ further noted Claimant testified he had limited lifting, standing, and walking capacity. AR 14. The ALJ then discredited Claimant's subjective statements, finding his "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but Claimant's "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence" and his activities of daily living. AR 14–15.

In analyzing the medical evidence in connection with discrediting Claimant's subjective statements, the ALJ addressed Claimant's long history for treatment of diabetes mellitus. The ALJ explained Claimant had difficulty complying with his medications and was quickly diagnosed with peripheral neuropathy. AR 14. The ALJ also noted following Claimant's stroke, his treatment plan included the need for medications, medication compliance, and exercise. The ALJ found Claimant "continued to have problems with his diabetes mellitus resulting in the development of a wound on his right second toe" which "worsened resulting in the need to amputate the toe during a hospitalization in August 2020." AR 14 (citing AR 997–1622.) The ALJ concluded Claimant "recovered from the toe amputation well with no deficits on his ambulation despite this procedure." AR 14 (citing AR 4255–57).

The ALJ then incorporated this finding when determining the RFC, explaining "while the claimant suffers from diabetes mellitus with complications of peripheral neuropathy and while he suffered strokes, the full medical evidence of records shows the claimant continues to maintain full strength and that he has a normal gait despite the additional complication of the toe amputation." AR 15–16.

### a.    Applicable Law

The Ninth Circuit has established a two-step analysis for evaluating a claimant's subjective symptom testimony. *See Zuniga v. Saul*, 801 F. App'x 465, 466 (9th Cir. 2019) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). The claimant must only prove the impairment reasonably could be expected to produce some degree of pain or other symptom; he is not required to prove the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms. *See Garrison*, 759 F.3d at 1014 (quoting *Smolen,* 80 F.3d at 1282). Moreover, the claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.* If the claimant satisfies the first step "and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Zuniga*, 801 F. App'x at 466 (quoting *Lingenfelter*, 504 F.3d at 1036). The Ninth Circuit has reiterated "[t]his is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *see Glanden v. Kijakazi*, 86 F.4th 838, 846 (9th Cir. 2023).

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work. *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "The ALJ must state specifically which symptom testimony is [discounted] and what facts in the record lead to that

conclusion." *Smolen*, 80 F.3d at 1284; *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (holding "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination"). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Roberts v. Saul*, 829 F. App'x 757, 760 (9th Cir. 2020) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *superseded by regulation on other grounds*); *see also Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020) ("Under our cases, the ALJ must identify the specific testimony that he discredited and explain the evidence undermining it."). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." *Werlein v. Berryhill*, 725 F. App'x 534, 535 (9th Cir. 2018) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2018)). If substantial evidence supports the ALJ's finding, the court may not second-guess the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

Here, the ALJ determined Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" and therefore the first prong of the ALJ's inquiry is satisfied. AR 14; *see Lingenfelter*, 504 F.3d at 1036. The ALJ did not find Claimant was malingering and the record not suggest as much; therefore, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms. *See id*.

b.    Analysis

While Claimant's medical records are voluminous, there are only a few records that address Claimant's treatment after his toe amputation. On August 22, 2020, Claimant presented to the Emergency Department for gangrene in his second right toe. He was admitted to the hospital and, following multiple x-rays and MRIs of his foot, underwent surgery to amputate the infected toe. *See generally* AR 1006–1622, 1033. The treatment notes from Claimant's August 31, 2020 discharge indicated his weight bearing status and

recommended activity level were "heel weightbearing right lower extremity in post op shoe." AR 1041, 1052, 1054, 1188, 1241.

Claimant was readmitted to the hospital on September 6, 2020 for diastolic heart failure and hypoxia. *See* AR 1629–42. During his hospital admission, additional x-rays were taken of Claimant's foot, and Claimant was seen for a podiatry consult by Dr. Anne Nhu-An Ngo on September 10, 2020. AR 1707. Dr. Ngo's treatment notes indicated two and a half weeks post operation Claimant was experiencing "delayed healing due to uncontrolled diabetes, no signs of infection." AR 1708; *see* AR 1706–10. Claimant's x-rays revealed "no apparent bone erosion or periosteal reaction to suggest acute osteomyelitis." AR 1707. The treatment notes indicated "Patient encouraged to stay off right foot, okay to heel weight bear with post op shoe to bathroom, kitchen and medical appointments only" and "to keep right foot out of water when bathing." AR 1708. At the time of Claimant's discharge on September 11, 2020, his recommended activity level and weightbearing status were "to try to stay off right foot" and "okay to heel weight bear with post op shoe to bathroom, kitchen and medical appointments only." AR 1650; *see also* AR 1760–61. The discharge instructions further directed the hospital to issue a front wheel walker prior to discharge and ensure the patient had a post op shoe. AR 1762, 1776, 1780, 2003.

The next treatment record following Claimant's toe amputation is on December 3, 2020, by Podiatrist Dr. Paula Nuguid for a recheck of Claimant's status post operation of the right second toe amputation and wound care. AR 4255–57. Dr. Nuguid's treatment notations indicated Claimant's right second toe amputation was healed and observed a "small pre ulcerative lesion medial base of nail" and "no drainage no swelling." AR 4256. She also noted "Vasc: DP and PT are 2/4" and "Neuro: protective sensation: 0/10 bilaterally" and "Sensation to temperature and sharp is absent." AR 4256. The treatment notes further stated "no tenderness to palpation. No bony prominences. Right 2nd toe amp." *Id.* The treatment notes do not address ambulation, gait, or Claimant's functional capabilities. Dr. Nuguid advised Claimant regarding daily dressing changes, to "[c]ontinue

to monitor for signs and symptoms of infection: redness, swelling, warmth, open wounds, drainage, fever, chills, nausea, vomiting" and Claimant was able to wet his foot in the shower. AR 4257. Dr. Nuguid recommended Claimant return in about four weeks for follow up care. *Id.* This appears to be the most recent treatment note in the administrative record addressing the recovery of Claimant's toe amputation.

Substantial evidence does not support the ALJ's conclusion Claimant had "no deficits on his ambulation" following his toe amputation. AR 14. The ALJ relied on the December 3, 2020 treatment records by Podiatrist Dr. Nuguid for this conclusion; however, the treatment records merely reflect medical observations as to the progress of Claimant's amputated toe recovery, the encounter diagnoses, and further care instructions. The treatment records do not address Claimant's ambulation or gait; nor do they describe any functional limitations (or lack thereof). AR 4255–65. Further, other treatment records do not provide substantial evidence to support the ALJ's conclusion there was no deficits to Claimant's ambulation post-amputation. The prior treatment records addressing Claimant's toe amputation from September 2020 directed Claimant to stay off his right foot except to heel weight bear with a post operation shoe to the bathroom, the kitchen, and medical appointments. AR 1650; *see also* AR 1760–61. While the administrative record contains treatment records after the December 3, 2020 visit with Dr. Nuguid, these records address Claimant's treatment with Ophthalmology for cataracts—including his pre-op visits on January 25, 2021 and February 16, 2021, bilateral cataract surgery on February 22, 2021, and post-operative exam on February 23, 2021. *See* 4297–4327, 4342–66, 4373–84, 4397–4412. These treatment records do not address Claimant's toe amputation, ambulation, gait, or his post-toe-amputation function-by-function capabilities. *See generally* AR 4263–4528. Thus, upon reviewing of the administrative record in detail—and in particular, the treatment records the ALJ relied on to support this conclusion—the Court cannot find substantial evidence supports the ALJ's determination Claimant recovered from the toe amputation "with no deficits on his ambulation." *See Garrison,* 759 F.3d at 1010 (The Court may "only review the reasons provided by the ALJ in the disability

determination and may not affirm the ALJ on a ground upon which he did not rely.").[4] As such, the Court cannot find the ALJ's discounting of Claimant's subjective statements based on this conclusion to be clear and convincing.

### 3.    Whether the ALJ Violated His Duty to Develop the Record

An ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Garcia*, 768 F.3d at 930 (citation omitted); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence."). "This duty exists even where when the claimant is represented by counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (citing *Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir. 1981)). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen,* 80 F.3d at 1288); *see also Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). "A duty to develop also may exist where the ALJ is interpreting raw medical data or records that are not 'susceptible to a lay person's understanding.'" *Howell v. Kijakazi*, No. 20-cv-2517, 2022 WL 2759090, at *9 (S.D. Cal. July 14, 2022) (citing *Mack v. Saul*, No. 18-cv-01287, 2020 WL 2731032, at *3 (E.D. Cal. May 26, 2020)).

"The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150. An ALJ has broad discretion in determining

---

[4] The ALJ also found Claimant's daily activities as listed in his function report were inconsistent with his subjective statements, including that Claimant "can still walk a couple of miles." AR 15. The Court notes Claimant's function report is dated September 14, 2019—almost a year prior to his toe amputation; as such, statements in Claimant's function report regarding his ability to walk do not constitute substantial evidence for the ALJ's conclusion regarding Claimant's ambulation post-toe-amputation.

whether to order a consultative examination and may do so when "ambiguity or insufficiency in the evidence . . . must be resolved." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (citation omitted); *see also* 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.").

As discussed above, the December 3, 2020 treatment records did not address Claimant's ambulation or gait; nor did they address Claimant's function-by-function capabilities post toe-amputation. In concluding Claimant had no deficits to his ambulation and his gait was normal despite the toe amputation, the ALJ apparently interpreted the treatment records himself to conclude there were no deficits to Claimant's ambulation and his gait was normal following the toe amputation. To do so was improper. *See Howell*, 2022 WL 2759090, at *7 (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) ("With exceptions, . . . an ALJ, as a layperson, is not qualified to interpret raw data in a medical record."); *Stevenson v. Colvin,* No. 15-cv-0463, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (finding the ALJ improperly interpreted raw medical data when the treatment records consisted of diagnoses and descriptions of the plaintiff's impairments only without opining on the effects of the impairments on the plaintiff's ability to work); *Rivera v. Berryhill*, No. ED cv 16-791, 2017 WL 5054656 (C.D. Cal. Oct. 31, 2017) (an ALJ "may not act as his own medical expert as he is 'simply not qualified to interpret raw medical data in functional terms'") (citations omitted). Thus, the issue facing the ALJ was the impact, if any, of Claimant's toe amputation on his function-by-function capabilities. The administrative record does not contain a medical opinion addressing this issue. Because the record was inadequate to establish Claimant's post-amputation function-by-function capabilities, the ALJ had a duty to further develop the record. *See Howell*, 2022 WL 2759090, at *9–10.

1

### 4.    Whether the Errors Are Harmless

2

3     Where, as here, the ALJ has erred, the Court must then consider whether the errors

4  were harmless, "meaning it was 'inconsequential to the ultimate nondisability

5  determination.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti*,

6  533 F.3d at 1038); *see also Batson v. Comm'n Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th

7  Cir. 2004) (finding error harmless where it did "not negate the validity of the ALJ's ultimate

8  conclusion").

9     The Court finds the ALJ's errors were not harmless. The ALJ incorporated the

10  finding regarding the toe amputation when determining Claimant's RFC, explaining "while

11  the claimant suffers from diabetes mellitus with complications of peripheral neuropathy

12  and while he suffered strokes, the full medical evidence of records shows the claimant

13  continues to maintain full strength and he has a normal gait despite the additional

14  complication of the toe amputation." AR 15–16. As discussed above, the ALJ improperly

15  interpreted treatment records to assess the functional impact of Claimant's toe amputation

16  on his abilities to work. *See Howell*, 2022 WL 2759090, at *8 ("The ALJ erred by using

17  his own interpretation and judgment of raw medical data to formulate Plaintiff's RFC.");

18  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was

19  simply not qualified to interpret raw medical data in functional terms and no medical

20  opinion supported the determination.").

21     Additionally, the Court cannot find the ALJ's failure to consider the effects of

22  Claimant's strokes beyond twelve months was harmless. Where a claimant prevails at step

23  two and the ALJ considers all impairments—regardless of severity—in the subsequent

24  steps, an ALJ's failure to consider an impairment "severe" is harmless. *See Lewis v. Astrue*,

25  498 F.3d 909, 911 (9th Cir. 2007). Although Claimant prevailed at step two, the ALJ did

26  not consider the late or cognitive effects of Claimant's strokes at any of the subsequent

27  steps of the sequential evaluation. Thus, the Court cannot conclude the ALJ's finding that

28  Claimant's strokes were not a severe impairment at step two was harmless.

Accordingly, the Court has discretion to either remand for further proceedings before the ALJ or remand for an award of benefits. *Garrison*, 759 F.3d at 1019. Where "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Id.* (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)); *see also Revels*, 874 F.3d at 668.

The Court finds remand for further administrative proceedings under sentence four of section 405(g) is appropriate. Further proceedings will serve a meaningful purpose by allowing the ALJ to develop the record consistent with this opinion.

### B.   Request For Remand for Consideration of New Evidence

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g), which provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides. . . . As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .

42 U.S.C. § 405(g). Thus, a federal court's judicial review of the ALJ's opinion is limited to the certified administrative record. *See id.* The letters and Work Status Reports attached to Plaintiff's brief are evidence outside of the administrative record and are not properly before the Court on judicial review of the ALJ's opinion. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838–39 (6th Cir. 2016) ("The district court simply was not in the position to consider new evidence in 'deciding whether to uphold, modify, or reverse the ALJ's decision.'") (quoting *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)).

However, the Social Security Act provides courts with discretion to remand cases for consideration of new evidence under sentence six of 42 U.S.C. § 405(g)  "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g); *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001), *as amended* (Nov. 9, 2001).

To qualify for such a remand, Plaintiff must present new evidence that is "material to determining disability" meaning such evidence "must bear directly and substantially on the matter in dispute" and show "a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Miller v. Berryhill*, 732 F. App'x 526, 528 (9th Cir. 2018) (citing *Mayes*, 276 F.3d at 462 and *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380–81 (9th Cir. 1984) (internal quotation marks omitted)). "The new evidence must be probative of the claimant's condition as it existed during the relevant time period and prior to the disability hearing." *Medina v. Colvin*, No. 16-cv-215, 2016 WL 4705571, at *2 (S.D. Cal. Sept. 8, 2016) (citing *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 511–12 (9th Cir. 1987)). Finally, the plaintiff "has the burden of showing there is 'good cause for his failure to submit the evidence in the prior proceeding.'" *Medina*, 2016 WL 4705571, at *1 (citing *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)).

Defendant argues all of Plaintiff's new evidence is nonprobative. Notably, Plaintiff's new evidence includes one medical opinion as to Claimant's functional capabilities for work post-toe-amputation. The Work Status Report dated November 16, 2020 from Dr. Nuguid reported Claimant was "at very high risk for re-ulceration and more proximal foot amputation" and required modified activity at work and at home from November 16, 2020 through February 28, 2021 as follows: Claimant was able to stand, walk, or bend at the waist occasionally (up to twenty-five percent of shift); lift, carry, and pull no more than ten pounds, and never torso/ spine twist, which are more limited restrictions than the opinions of state agency medical consultants. [ECF No. 22 at 10.] Had this evidence originally been

presented to the ALJ, the ALJ would have been required to consider and evaluate it for persuasiveness. *See* 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). While Defendant contends this Work Status Report applies to a less-than-one year window of timing, ECF No. 25 at 9, it is nevertheless material to determining Claimant's post-toe amputation function-by-function capabilities—precisely the type of evidence that the ALJ failed to develop.

Nevertheless, as the Court has already found remand appropriate under sentence four of 42 U.S.C. § 405(g) for the reasons stated above, the Court need not and does not decide whether remand for consideration of new evidence under sentence six of 42 U.S.C. § 405(g) is also appropriate.

## V.   CONCLUSION

Based on the foregoing analysis, the Court grants Plaintiff's opening brief, ECF No. 22, **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** the matter for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

Dated:  March 15, 2024

HON. MICHELLE M. PETTIT
United States Magistrate Judge